**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**

Case No.: 1:22-cv-20293-RNS

FERNANDEZ FORESTAL,
on behalf of himself and on behalf
of all others similarly situated,

      Plaintiff,

v.

KIOSITE, LLC and
SH GROUP OPERATIONS, L.L.C.,

      Defendants.

_____/

## AMENDED CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff, Fernandez Forestal, on behalf of himself, the putative classes set forth below, and in the public interest, brings this Amended Class Action Complaint against Kiosite, LLC ("Kiosite") and SH Group Operations, L.L.C. ("SH Group") (collectively "Defendants") for violations of the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. § 1681 et seq. Plaintiff seeks to hold Defendants accountable for violating his federally protected privacy rights.

## PRELIMINARY STATEMENT

1.      The FCRA, 15 U.S.C. § 1681b, makes it presumptively unlawful to

obtain and use a consumer report for an employment purpose.[1] The use of a consumer report for employment purposes only becomes lawful if the consumer reporting agency, reseller and person procuring the report comply with the FCRA's strict requirements.

2.     Defendants Kiosite and SH Group willfully and systematically violated Plaintiff's rights and the rights of other putative class members.

### Summary of Claims Against Defendant Kiosite

3.     Kiosite, a self-described provider of "data driven employee screening, selection and development" solutions, used and sold consumer reports to its employer-clients.

4.     SH Group was a Kiosite client.

5.     Kiosite is a "user" of consumer reports for employment purposes. 15 U.S.C. § 1681b.

6.     As a user, Kiosite violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring (or causing to be procured) consumer reports on Plaintiff and other putative class members, without lawfully disclosing to them that it may obtain their consumer report, before obtaining a copy of their consumer report

7.     As a user, Kiosite violated 15 U.S.C. § 1681(b)(b)(2)(A)(ii) by procuring (or causing to be procured) consumer reports on Plaintiff and other

---

[1] In the employment context, consumer reports are commonly referred to as "background checks." Consumer reports and background checks are used interchangeably herein.

putative class members without their written authorization.

8.    If Kiosite is not a user of consumer reports, Kiosite is a "reseller" of consumer reports as defined by 15 U.S.C. § 1681a(u).

9.    As a reseller, Kiosite violated 15 U.S.C. §§ 1681e(e)(1)(A)-(B) when it procured Plaintiff's consumer report from Sterling Infosystems, Inc. ("Sterling"), a consumer reporting agency, for purposes of reselling his consumer report to SH Group without disclosing to Sterling the identity of the end-user of the report and each permissible purpose under § 1681b for which the report was furnished.

10.    As a reseller, Kiosite violated 15 U.S.C. §§ 1681e(e)(2)(A)(i)-(iii),(B) when it procured Plaintiff's consumer report from Sterling for purposes of reselling his consumer report to SH Group without establishing reasonable procedures to identify each end user of the resold report or obtaining certifications for each purpose the report will be used, and/or obtaining certifications the report will be used for no other purpose or making reasonable efforts to verify the identifications and certifications.

11.    In the employment context, resellers are held to the same standards as consumer reporting agencies with respect to requirements designed to protect consumers' rights.

12.    For instance, consumer reporting agencies and resellers may only furnish a consumer report for employment purposes if the user of the report, *i.e.* the

employer, certifies as to each report that it has complied with the disclosure and written authorization requirements set forth in 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) and will provide pre-adverse action notice, if applicable, pursuant to 15 U.S.C. §§ 1681b(b)(3)(A)(i)-(ii).

13.   The FCRA requires consumer reporting agencies and resellers furnish reports containing public-record information likely to have an adverse effect on a consumer's ability to obtain employment, to notify the consumer and maintain strict procedures to ensure the accuracy of the information. 15 U.S.C. § 1681k(a)(1).

14.   As a reseller, Kiosite violated 15 U.S.C. § 1681k(a)(1) when its re-furnished Plaintiff's consumer report (or consumer report information) to SH Group without contemporaneously notifying him that it was reporting public record information likely to have an adverse effect on his ability to obtain employment to SH Group or ensuring the accuracy of the report.

## Summary of Claims Against SH Group

15.   SH Group is an employer and user of consumer reports it procured from Kiosite.

16.   SH Group violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other putative class members without lawfully disclosing to them that it may obtain their consumer report before obtaining a

copy of their consumer report.

17.    SH Group violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by procuring consumer reports on Plaintiff and other putative class members without first obtaining their written authorization before obtaining a copy of their consumer report.

18.    SH Group violated 15 U.S.C. § 1681b(b)(3)(A)(i)-(ii) by failing to provide Plaintiff and other putative class members notice and a copy of their consumer report before taking adverse employment action against them based in whole, or in part, on their consumer reports as required by 15 U.S.C. § 1681b(b)(3)(A)(i)-(ii).

## Summary of Class Action Claims

19.    In Count I, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(2)(A)(i) against Kiosite as on behalf of a "Kiosite No Disclosure Class" consisting of:

> **All job applicants and employees in the United States subject of a consumer report procured (or caused to be procured) by Kiosite, LLC for employment purposes but to whom Kiosite, LLC did not first provide a clear and conspicuous disclosure in a document consisting solely of the disclosure in the five years preceding the filing of this action through the date of final judgment.**

20.    In Count II, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(2)(A)(ii) against Defendant Kiosite on behalf of a "Kiosite No Authorization Class" consisting of:

> **All job applicants and employees in the United States subject of a consumer report procured (or caused to be procured) by Kiosite, LLC for employment purposes but from whom Kiosite, LLC did not first obtain written authorization to procure their report in the five years preceding the filing of this action through the date of final judgment.**

21.     In Count III, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(2)(A)(i) against SH Group as on behalf of a "SH Group No Disclosure Class" consisting of:

> **All job applicants and employees in the United States subject of a consumer report procured by SH Group for employment purposes but to whom SH Group did not first provide a clear and conspicuous disclosure in a document consisting solely of the disclosure in the five years preceding the filing of this action through the date of final judgment.**

22.     In Count IV, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(2)(A)(ii) against SH Group on behalf of a "SH Group No Authorization Class" consisting of:

> **All job applicants and employees in the United States subject of a consumer report procured by SH Group for employment purposes but from whom SH Group did not first obtain written authorization to procure their report in the five years preceding the filing of this action through the date of final judgment.**

23.     In Count V, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(3) against SH Group on behalf of an "SH Group Adverse Action Class," defined as:

> **All SH Group Operations, LLC job applicants and employees in the United States against whom adverse employment action was taken, based, in whole or in part, on information contained in their consumer report, who were not provided notice and a copy of their report in the five years preceding the filing of this action through the date of final judgment.**

24.     In Count VI, Plaintiff asserts a FCRA claim under 15 U.S.C. §§ 1681e(e)(1)(A) and 15 U.S.C. §§ 1681e(e)(2)(A), (B) against Kiosite on behalf of a "1681e(e)" Class defined as:

> **All consumers who were subject of a consumer report (or any information in the report) that was procured (or caused to be procured) by Kiosite for resale without disclosing the identity of the end-user of the report to the consumer reporting agency or maintaining reasonable procedures to identify each end user or obtain from each end user the requisite certifications, within five years of the filing of this lawsuit through the date of final judgment in this action.**

25.     In Count VII, Plaintiff asserts a FCRA claim under 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii) against Kiosite on behalf of a "No Certification" Class defined as:

> **All employees and job applicants in the United States who were the subject of a consumer report furnished by Kiosite without the user's certification of compliance with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3), within five years of the filing of this lawsuit through the date of final judgment in this action.**

26.     In Count VIII, Plaintiff brings a separate claim against Kiosite under § 1681k, for a "1681k Notice" Class defined as:

> **All employees and job applicants in the United States who were the subject of a consumer report (or consumer report information) furnished by Kiosite that included criminal history entries of the grade of misdemeanor or higher, within five years of the filing of this lawsuit through the date of final judgment in this action.**

## The Parties

27.     Individual and representative Plaintiff, Fernandez Forestal ("Plaintiff") is a member of the putative classes.

28.     Kiosite is a user of consumer reports as contemplated by the FCRA, at 15 U.S.C. § 1681b.

29.     Kiosite is a reseller of consumer reports as defined by 15 U.S.C. § 1681a(u).

30.     SH Group is an employer and user of consumer reports as contemplated by 15 U.S.C. § 1681b.

## JURISDICTION AND VENUE

31.     This is an action for statutory damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., a federal statute.

32.     This action is presently in this Court because Defendant Kiosite removed the action from the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, where it was originally filed because the events giving rise to the allegations in this Complaint occurred in Miami, Florida.

## FCRA Requirements for Procuring and Using Employment-Purposed Consumer Reports

33.     The FCRA makes accessing employment-purposed background checks by anyone presumptively illegal. To access and use background checks, employers must abide by the FCRA's strict disclosure and notice requirements and must—before they may obtain a report in the first place—certify that they have (as to disclosure) and will (regarding notice) abide by these requirements. *See* 15 U.S.C. §§ 1681b(b)(2), (3):

    **(2)**    **Disclosure to Consumer**.

    (A)    *In general*. Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –

        (i)    *a clear and conspicuous* disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists *solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

        (ii)    the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report *by that person*.

15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) (emphasis added).

34.    Kiosite did not provide consumers a clear and conspicuous disclosure in a document consisting solely of the disclosure before procuring (or causing to be procured) their consumer reports for employment purposes.

35.    Kiosite did not obtain consumers' written authorization to procure (or cause to be procured) their consumer reports before procuring their consumer reports for employment purposes.

36.    SH Group did not provide consumers a clear and conspicuous disclosure in a document consisting solely of the disclosure before procuring (or causing to be procured) their consumer reports for employment purposes.

37.    SH Group did not obtain consumers' written authorization to procure (or cause to be procured) their consumer reports before procuring their consumer reports for employment purposes.

38.    The    purpose    of    FCRA    notice    provisions,    including    §
1681b(b)(2)(A)(i)-(ii), is to put consumers on notice that their consumer report is
being procured and who is procuring it. This gives consumers the opportunity to
exercise substantive rights conferred by the FCRA or other statutes, allowing
consumers to decide who accesses their personal, sensitive information.

39.    Without clear notice as to who is obtaining and accessing their
personal, sensitive information, applicants and employees are deprived of the
opportunity to make informed decisions, assert protected rights, or maintain control
over their personal information. Control over one's personal and private
information is a fundamental right dating back to English common law and
violations thereof have historically been recognized as actionable in American
courts.

40.    Kiosite and SH Group knowingly and recklessly disregarded case law
and regulatory guidance and willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii)
by procuring (or causing to be procured) consumer reports on applicants and
employees without first providing a disclosure or obtaining their written
authorization ahead of time.

41.    Defendants' conduct is also willful because:

    a.    Defendants are large and sophisticated organizations with
           access to legal advice through its own attorneys and there is no
           evidence it determined its own conduct was lawful;

10

b.    Defendants knew or had reason to know that its conduct was inconsistent with published FCRA guidance interpreting the FCRA, case law and the plain language of the statute; and

c.    Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

42.    Kiosite acted in a deliberate or reckless disregard of its obligations and the rights of Plaintiff and the "Kiosite No Disclosure" and the "Kiosite No Authorization" class members.

43.    SH Group acted in a deliberate or reckless disregard of its obligations and the rights of Plaintiff and the "SH Group No Disclosure" and the "SH Group No Authorization" class members

44.    Any reasonable entity of Defendants' size and sophistication knows or should know about fundamental FCRA compliance requirements.

45.    Providing notice to consumers is a critical component of the FCRA, evidenced by the fact the FCRA also contains several other notice provisions, including 15 U.S.C. § 1681b(b)(3)(A) (pre-adverse action).[2]

46.    The FCRA states "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to

---

[2] *See, e.g.* 15 U.S.C. § 1681b(4)(B) (notice of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding use of public record information); § 1681h (form and conditions of disclosure; and § 1681m(a) (notice of adverse action).

whom the report relates . . . a copy of the report[.]" 15 U.S.C. § 1681b(b)(3)(A)(i).

47.     SH Group violated 15 U.S.C. § 1681b(b)(3)(A)(i), which requires persons who use consumer reports provide notice and a copy of the report to the affected consumer before any adverse action is taken.

48.     By failing to provide Plaintiff and other putative class members with the information required by 15 U.S.C. § 1681b(b)(3)(A)(i) before taking adverse employment action against them based on the information contained in such reports, SH Group willfully disregarded unambiguous regulatory guidance and the plain language of the statute. 15 U.S.C. § 1681b(b)(3)(A).

### FCRA Requirements for Resellers of Consumer Reports and Consumer Report Information

49.     The FCRA imposes the same requirements on re-sellers as it does consumer reporting agencies.

50.     The FCRA also makes it presumptively illegal for a consumer reporting agency or reseller like Kiosite to furnish a report in the employment context.  A consumer reporting agency or reseller may issue such a report "only if" it first obtains from the person to whom it plans to issue the report a certification that it has provided the consumer with a disclosure, obtained the consumer's written authorization and if applicable, will provide the consumer with pre-adverse action notice.

(b) **Conditions for Furnishing and Using Consumer Reports**

**for Employment Purposes**

(1) *Certification from user.* A consumer reporting agency may furnish a consumer report for employment purposes only if

    (A)  the person who obtains such report from the agency certifies to the agency that

        (i)  the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable…

15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii).

51.    These requirements must be met as to *each report* a re-seller issues; blanket or prospective certifications of compliance by the users of reports are not permitted. That means that for *every report* that a Kiosite employer-client procured from Kiosite, the recipient must make the requisite certifications to Kiosite. *Id*.

52.    Kiosite furnished consumer reports to its employer-clients without first obtaining certification that the consumer had been provided a lawful disclosure, had authorized in writing the procurement of the consumer report, and would provide pre-adverse action notice when applicable.

53.    The FCRA also requires that a re-seller reporting negative public record information likely to adversely affect a consumer's ability to obtain employment, must provide the consumer with contemporaneous notice of the information it is reporting and to whom it is reporting it.

54.    Kiosite violated 15 U.S.C. § 1681k(a)(1) when it failed to provide

Plaintiff with contemporaneous notice when it furnished Plaintiff's consumer report information to SH Group. The information Kiosite furnished was likely to have an adverse effect upon Plaintiff's ability to obtain employment. However, Kiosite never notified Plaintiff that it was reporting the negative information about him or reporting such information to SH Group.

55.   Kiosite also violated 15 U.S.C. § 1681k(a)(2) because it did not maintain strict procedures to ensure the public record information it reports is complete and up to date. Kiosite simply relied upon its vendor, Sterling, to maintain such procedures.

56.   Additionally, certain FCRA provisions specifically apply only to resellers. For instance, a reseller is required to disclose the end-user of the consumer report (or information in the report) to the consumer reporting agency from whom it procures the report (or information).

> (e) Procurement of Consumer Report for Resale
>    (1) *Disclosure.* A person may not procure a consumer report for purposes of reselling the report (or any information in the report) unless the person discloses to the consumer reporting agency that originally furnishes the report
>
>       (A) the identity of the end-user of the report (or information) and
>       (B) each permissible purpose under section 604 [§ 1681b] for which the report is furnished to the end user of the report (or information).
>
>    (2) *Responsibilities of procurers for resale.* A person who procures a consumer report for purposes of reselling the report (or any information in the report) shall
>
>       (A) establish and comply with reasonable procedures designed to ensure that the report (or information) is resold by the person only for a

purpose for which the report may be furnished under section 604 [§ 1681b], including by requiring that each person to which the report (or information) is resold and that resells or provides the report (or information) to any other person

(i) identifies each end user of the resold report (or information);

(ii) certifies each purpose for which the report (or information) will be used; and

(iii) certifies that the report (or information) will be used for no other purpose; and

(B) before reselling the report, make reasonable efforts to verify the identifications and certifications made under subparagraph (A).

15 U.S.C. §§ 1681e(e)(1), (2).

57.     Kiosite procured (or caused to be procured) Plaintiff's consumer report (or consumer report information) from Sterling for the purpose of resale but failed to disclose the identity of the end-user to Sterling.

### *Facts Supporting Plaintiff's Claims*

58.     Kiosite provides applicant screening and talent management software for its employer-clients.

59.     As part of its offering to employers, Kiosite furnishes its clients with consumer reports (or consumer report information), which its clients use to make employment decisions, such as hiring and firing.

60.     Kiosite does not perform the actual background check. Rather, Kiosite procures the consumer reports (or consumer report information) from a vendor, Sterling, a consumer reporting agency.

61.     Kiosite assembles, merges and evaluates the consumer reports (or

consumer report information) it obtains from Sterling, and re-sells it as "HireTrue" to its employer-clients.

62.    Kiosite advertises "HireTrue" on its website:[3]



**Criminal Background Screening**

For many roles, security and records checks are critical. While saving time and money, you can meet your pre-employment hiring requirements with screening available through HireTrue. We offer a wide variety of checks—from identity and education verification to criminal background, along with nationwide database and offender registry access.

63.    The "HireTrue Professional Edition" is advertised as "Background Screening Services."

64.    Kiosite sells various "HireTrue" background checks to its clients, including a "HireTrue Nation Scan" and a "State Criminal Check."

65.    Kiosite does not disclose to its employer-clients that the information contained in the HireTrue reports is actually procured from a consumer reporting agency.

66.    Kiosite sells the consumer report information it obtains from Sterling to its clients as "HireTrue" reports.

67.    When Kiosite's employer-clients order consumer reports through Kiosite's customer facing portal, they are ordering a "HireTrue" product. Nothing on Kiosite's customer facing portal informs its clients that the information contained in the HireTrue report is obtained from a consumer reporting agency.

---

[3] http: kiosite.com/hiretrue

68.    Kiosite's invoices to its clients reflect charges for "HireTrue" background checks.

69.    Discovery will show Kiosite marks up the cost of the information it obtains from Sterling and profits from the sale of its HireTrue products.

70.    On June 3, 2019, SH Group ordered Plaintiff's consumer report from Kiosite.

71.    SH Group did not provide Plaintiff a written disclosure or obtain Plaintiff's written authorization prior to procuring his consumer report from Kiosite

72.    Kiosite procured (or caused to be procured) Plaintiff's consumer report or consumer report information from Sterling:

| HireTrue Nation Scan | |
|---|---|
| **Order Information** | |
| Applicant: | **Fernandez Forestal** |
| Status: | Complete |
| Order ID: | 67471 |
| Date Ordered: | Mon 06/03/19 3:58 PM |
| Date Fulfilled: | Tue 06/04/19 9:13 PM |

73.    Kiosite did not provide Plaintiff a written disclosure or obtain his written authorization prior to procuring (or causing to be procured) his consumer report from Sterling.

74.    Kiosite did not disclose to Sterling that SH Group was the end-user of the consumer report information when it procured (or caused to be procured) his

consumer report or consumer report information for resale purposes.

75.     Kiosite assembled, merged and evaluated Plaintiff's consumer report information, which it had obtained from Sterling. Kiosite's HireTrue report designated Plaintiff's result as "Review."

| State Criminal Check – Florida | |
|---|---|
| **Order Information** | |
| Applicant: | **Fernandez Forestal** |
| Status: | Complete |
| Order ID: | 67470 |
| Date Ordered: | Mon 06/03/19 3:58 PM |
| Date Fulfilled: | Tue 06/04/19 2:13 PM |
| **Report** | |
| ID: | 84176944 |
| Order Status: | Complete |
| Result Status: | Review |
| Search Type: | statewide |

76.     The "Review" designation was an adverse employment action, since Plaintiff could not be hired if he was designated "Review."

77.     The "Review" designation was an adverse employment action since it informed SH Group that there was information contained in Plaintiff's HireTrue report that may disqualify him from employment.

78.     Kiosite furnished Plaintiff's consumer report or consumer report information to SH Group without requiring SH Group to certify it had provided Plaintiff with a disclosure and obtained his written authorization as required by 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii).

79.     Kiosite furnished Plaintiff's consumer report or consumer report information to SH Group without requiring SH Group to certify it would provide

Plaintiff with pre-adverse action notice required by 15 U.S.C. §§ 1681b(b)(3)(A)(i), if applicable.

80.   The HireTrue report contained information likely to have an adverse effect on Plaintiff's prospects for employment.

81.   Kiosite had knowledge its "HireTrue" report contained information likely to have an adverse effect on Plaintiff's ability to obtain employment because it contained publicly available criminal record information, which caused Kiosite to adjudicate Plaintiff "Review."

82.   However, Kiosite failed to provide Plaintiff with contemporaneous notice that it was reporting such information about him to SH Group.

83.   Discovery will show that on June 4, 2020, Kiosite furnished Plaintiff's consumer report, complete with the "Review" designation, to SH Group, causing SH Group to make the decision to reject Plaintiff's application for employment.

84.   Discovery will show that on or around June 4, 2019, SH Group accessed Plaintiff's consumer report through Kiosite's customer facing portal.

85.   Discovery will show SH Group rejected Plaintiff for employment in whole, or in part, because of his consumer report. Thus, Plaintiff suffered an adverse employment action.

86.   SH Group did not provide Plaintiff with notice or copy of his background check before denying him employment. As a result, Plaintiff never

saw what was on his consumer report and didn't know whether his personal information was being reported accurately.

87.    SH Group's failure to provide Plaintiff with notice and a copy of his report before rejecting him for employment deprived Plaintiff of the opportunity to discuss the contents of his consumer report with SH Group, put the report in context or otherwise plead his case for employment with SH Group.

88.    In October, 2020, Plaintiff, through counsel, requested a copy of his consumer report from SH Group.

89.    SH Group [falsely] denied it had obtained Plaintiff's consumer report in 2019 or used it to deny him employment. SH Group asserted it last obtained Plaintiff's consumer report in April, 2017.

90.    As purported evidence, SH Group provided Plaintiff a copy of the disclosure and authorization it had provided him in April, 2017.

91.    The April 2017 did not identify SH Group as the entity obtaining his consumer report.

92.    The authorization Plaintiff executed in April 2017 did not authorize SH Group to obtain his consumer report.

93.    The April 2017 disclosure and authorization identified Starwood Capital Group. In April 2017, Plaintiff had applied for employment with 1Hotel, not Starwood Capital Group.

94.     In December, 2020, using the information he had obtained from SH Hotel Group, Plaintiff requested a copy of his consumer report file from Sterling.

95.     In June 2021, Plaintiff received his consumer report file from Sterling.

96.     Upon review of his consumer report file, Plaintiff discovered for the first time that Kiosite, without his knowledge, had procured his consumer report in June, 2019. Up until that time, Plaintiff was unaware of Kiosite's existence or that it had procured his consumer report.

97.     In June, 2019, Kiosite did not disclose to Plaintiff it intended to procure his consumer report from a consumer reporting agency.

98.     In June, 2019, Kiosite did not obtain Plaintiff's written authorization to procure his consumer report.

99.     In the course of litigating his action against Kiosite, Plaintiff subpoenaed documents from SH Group. SH Group produced documents revealing it had obtained Plaintiff's consumer report information in June, 2019.

100.    Plaintiff was surprised SH Group possessed his personal, private and sensitive information. Plaintiff had never received a disclosure or provided SH Group with his written authorization to obtain his consumer report. Moreover, SH Group had flat out denied procuring or using his consumer report to take an adverse employment action against him in June, 2019.

101.    In June, 2019, Kiosite procured (or caused to be procured) Plaintiff's

consumer report and profited from the information contained therein when it resold the information to SH Group as a "HireTrue" report.

102.   Plaintiff would not have authorized the resale of his consumer report information if he had known Kiosite had failed to follow the laws intended to protect his privacy.

103.   Plaintiff would not have authorized Kiosite or SH Group to obtain his consumer report without first providing him a disclosure or obtaining his written authorization.

104.   Plaintiff values his privacy and would not have consented to Kiosite or SH Group obtaining his personal and sensitive information without his knowledge or written authorization.

105.   Plaintiff would not have authorized Kiosite or SH Group to obtain his consumer report in June, 2019, if he had known it was being obtained illegally and would be used to deny him employment.

106.   If Plaintiff had not obtained his full consumer report file from Sterling, Plaintiff would have never known Kiosite had procured or caused his consumer report to be procured in June, 2019

107.   If Plaintiff had not obtained his full consumer report file from Sterling, Plaintiff would have never known Kiosite furnished his consumer report information to SH Group in June, 2019.

108.   If Plaintiff had not obtained his full consumer report file from Sterling, Plaintiff would have never known Kiosite possessed his personal and sensitive information.

109.   If Plaintiff had not subpoenaed documents from SH Group, Plaintiff never would have known SH Group obtained his consumer report information or possessed his personal, sensitive information. After all, SH Group initially denied obtaining Plaintiff's consumer report.

110.   If Plaintiff had not obtained a copy of his full file disclosure from Sterling, Plaintiff would have never seen the consumer report that was used in June, 2019, to take an adverse employment action against him because he was never provided pre-adverse action notice or a copy of his report. Consequently, Plaintiff would never have seen the contents of his own consumer report or learned what was being reported about him.

111.   Because Kiosite never identified SH Group to Sterling as the end-user of Plaintiff's consumer report, SH Group was not identified as a recipient of Plaintiff's consumer report information. In fact, only Kiosite was identified as a recipient.

112.   Plaintiff only learned SH Group had procured and used his consumer report in June 2019 because he filed his action against Kiosite.

113.   Because Kiosite never identified SH Group to Sterling as the end-user

of Plaintiff's consumer report, Plaintiff's consumer report file did not SH Group as a user or possessor of his personal, sensitive information.

114.   Because Kiosite never required SH Group to certify it had provided Plaintiff a disclosure and obtained his written authorization as a condition for receiving Plaintiff's consumer report, SH Group did not provide Plaintiff a disclosure or obtain Plaintiff's written authorization prior to procuring his consumer report

115.   Because Kiosite never required SH Group to certify it would provide Plaintiff pre-adverse action notice, if applicable, SH Group did not provide Plaintiff pre-adverse action notice and a copy of his consumer report before taking an adverse employment action against him.

### The FCRA Violations Alleged Bear
### Close Relationships to Common Law Claims

116.   The FCRA's disclosure and authorization requirements codified in 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) bear a close relationship to privacy torts actionable under common law including "(a) unreasonable intrusion upon the seclusion of another, ... (b) appropriation of the other's name or likeness, ... (c) unreasonable publicity given to the other's private life, ... or (d) publicity that unreasonably places the other in a false light before the public ....' Restatement (Second) of Torts § 652A(2)(a)-(d) (1977)."

117.   These statutory requirements were enacted by Congress expressly to

24

protect consumer privacy by restricting the circumstances under which a person (in this instance Kiosite and SH Group) could procure (or cause to be procured) and use a consumer's personal information found in a consumer report.

118.   The FCRA's disclosure and authorization requirements set forth in 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) bear a close relationship to common law claims including invasion of privacy and intrusion upon seclusion, as these provisions are intended protect fundamental privacy rights, including the right to maintain control over one's personal information and to prevent the dissemination of a person's personal and sensitive information without a person's knowledge or authorization.

119.   The FCRA's pre-adverse action notice requirements set forth in 15 U.S.C. §§ 1681b(b)(3)(A)(i)-(ii) and 15 U.S.C. §§ 1681k bear a close relationship to common law claims including invasion of privacy and intrusion upon seclusion; both are intended to protect the use of a person's personal and sensitive information without their knowledge, the right to know precisely what is being reported about them and to whom it is being reported, and to ensure the right to exercise "confession and avoidance" remedies available under common law.

120.   The FCRA's certification requirement set forth in 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii) bears a close relationship to common law claims including invasion of privacy and intrusion upon seclusion, as it is intended protect fundamental privacy rights and the release of a person's personal and sensitive

information without a person's knowledge or authorization.

121.   The FCRA's re-seller requirements set forth in 15 U.S.C. §§ 1681e(e)(1)(A),(2)(A),(B) bear a close relationship to common law claims including invasion of privacy and intrusion upon seclusion, they are intended protect fundamental privacy rights, including a person's right to know who possesses their personal information.

122.   Kiosite invaded Plaintiff's privacy when it failed to provide Plaintiff with a disclosure or obtain his written authorization before it procured (or caused to be procured) his consumer report, which contained Plaintiff's personal and sensitive information.

123.   Kiosite invaded Plaintiff's privacy by accessing his personal and sensitive information without first disclosing to Plaintiff its intent or obtaining his written authorization.

124.   Kiosite invaded Plaintiff's privacy by accessing Plaintiff's personal and sensitive information without his knowledge or written consent.

125.   Kiosite invaded Plaintiff's privacy by procuring and re-selling Plaintiff's personal and sensitive information without abiding by the FCRA's requirements intended to protect Plaintiff's privacy rights.

126.   Kiosite invaded Plaintiff's privacy by releasing his consumer report to SH Group without requiring SH Group to certify it had provided Plaintiff with a

written disclosure beforehand.

127.   Kiosite invaded Plaintiff's privacy by releasing his consumer report to SH Group without requiring SH Group to certify Plaintiff's had authorized SH Group, in writing, to procure his consumer report.

128.   Kiosite procured Plaintiff's consumer report information for resale but never identified SH Group as the end-user, thereby invading Plaintiff's privacy by depriving him of knowing to whom his consumer report was published.

129.   Plaintiff's injuries, invasion of privacy, intrusion upon seclusion and informational injury, are directly traceable to Kiosite's violation of the certification requirements imposed upon consumer reporting agencies and resellers.

130.   Kiosite invaded Plaintiff's privacy by merging, assembling, evaluating and re-selling Plaintiff's personal, private and sensitive information into a consumer report for employment purposes, and furnishing said consumer report without a permissible purpose.

131.   Kiosite caused Plaintiff injury because the report Kiosite furnished was used, in whole or in part, as the basis for an adverse employment action.

132.   Kiosite caused Plaintiff injury because Kiosite permitted the user of its consumer reports to circumvent the disclosure, authorization and notification requirements of the FCRA when using consumer reports for employment purposes. by failing to require the user to certify compliance therewith.

133.   Plaintiff's injuries, invasion of privacy, intrusion upon seclusion and informational injury, are directly traceable to Kiosite's violation of the FCRA's re-seller provisions.

134.   Kiosite's statutory violations bear a close relationship to common law claims including invasion of privacy and intrusion upon seclusion.

135.   Kiosite procured Plaintiff's consumer report information for resale but never identified SH Group as the end-user, thereby invading Plaintiff's privacy and violating a right Congress elevated to a concrete harm by incorporating the identification requirement into the FCRA.

136.   Kiosite invaded Plaintiff's privacy by reporting information likely to adversely affect his ability to obtain employment without contemporaneously notifying him it was reporting such information to SH Group. Plaintiff's injury – invasion of privacy, is directly traceable to Kiosite's failure to provide § 1681k notice as the FCRA requires.

137.   Kiosite unjustly enriched itself by selling Plaintiff's personal and sensitive consumer report information without abiding by the FCRA requirements intended to protect Plaintiff's privacy rights, including its failure to identify SH Group as the end-user or and failing to provide Plaintiff contemporaneous notice when reporting public record information likely to have a negative effect on his ability to obtain employment to SH Group.

28

138.   Plaintiff suffered a concrete informational injury when Kiosite procured his consumer report information from Sterling without disclosing SH Group as the end-user. Consequently, when Plaintiff requested his full file disclosure from Sterling, it did not identify SH Group as the user of his consumer report information. Thus, Plaintiff was deprived of information to which he was legally entitled – the identity of the end-user of his consumer report information, and his privacy was invaded. Only through additional effort was Plaintiff able to learn SH Group had used and still possessed his personal information.

139.   Plaintiff suffered a concrete informational injury when Kiosite furnished his consumer report containing information likely to adversely affect his ability to obtain employment to SH Group without providing him contemporaneous notification. Specifically, Plaintiff was entitled to the information being reported, and to whom it was being reported, at the time it was reported.

140.   Plaintiff's privacy was invaded when SH Group circumvented the FCRA's disclosure and authorization requirements. Specifically, SH Group obtained the personal and sensitive information in his consumer report without his knowledge or written authorization. SH Group's statutory violations bear a close relationship to common law claims of invasion of privacy and intrusion upon seclusion, which Congress elevated to a concrete harm by enacting the FCRA.

141.  Plaintiff suffered a concrete informational injury when SH Group circumvented the FCRA's disclosure requirement. When SH Group obtained Plaintiff's consumer report without disclosing its intent to procure a consumer report, Plaintiff suffered informational injury in that he lost control over the dissemination of his personal and sensitive information – a right Congress elevated to a concrete harm by incorporating the disclosure requirement into the FCRA.

142.  Plaintiff suffered a concrete informational injury when SH Group circumvented the FCRA's authorization requirement. When SH Group obtained Plaintiff's consumer report without obtaining his written authorization, Plaintiff suffered an informational injury in that he lost control over the dissemination of his personal and sensitive information – a right Congress elevated to a concrete harm by incorporating the written authorization requirement into the FCRA.

143.  SH Group violated the FCRA by procuring consumer reports on Plaintiff and other putative class members without first providing them a clear and conspicuous disclosure as required by 15 U.S.C. § 1681b(b)(2)(A)(i).

144.  SH Group violated the FCRA by procuring consumer reports on Plaintiff and other class members without first obtaining written authorization as required by 15 U.S.C. § 1681b(b)(2)(A)(ii).

145.  SH Group's failure to provide a disclosure or obtain written authorization created a risk of harm that Plaintiff and members of the putative

30

classes would never know their personal and sensitive information was procured, used and possessed by SH Group.

146.   Plaintiff and the putative class adverse action class members suffered additional concrete harm because of the adjudication of their reports. In taking such adverse actions against applicants before providing them with the notice and summary of rights demanded by § 1681b(b)(3), Defendants deprived Plaintiff and class members with information to which they were statutorily entitled at a particular time. This deprivation worked concrete harm on Plaintiff and members of the classes.

147.   Plaintiff and each putative class member have been substantively harmed and injured by Defendants in the deprivation of the congressionally mandated information.

148.   SH Group's failure to provide pre-adverse action notice injured Plaintiff in that he was deprived of information due to him at a particular time, and the ability to contest or discuss with Defendants the content of his consumer report.

149.   These rights attach even if the report was accurate, as courts regularly recognize that § 1681b(b)(3) entitles consumers to know the same information that is being used to make a hiring decision and, even if the report contains no inaccuracies, to soften the brunt of negative information by discussing it preemptively with the user before the hiring decision is made.

150.    SH Group took an adverse employment action against Plaintiff based in whole or in part on the content of his consumer report but did not first provide him with pre-adverse action notice, including a copy of his consumer report. Therefore, SH Group failed to satisfy the federally imposed requirements of § 1681b(b)(3)(A)(i). This resulted in an informational injury to Plaintiff and the putative class members.

151.    Because Defendants failed to provide Plaintiff with a copy of his consumer report, Plaintiff was deprived of the opportunity to proactively address how his background was being interpreted by Defendants and to discuss the information and place it in context.

152.    If Plaintiff had been timely provided his report, Plaintiff would have been able to put his report in context and secure employment.

153.    Plaintiff was worried whether the information contained in his consumer report was accurate and how it would affect his prospects of employment elsewhere.

154.    Plaintiff was delayed access to his consumer report and deprived of the opportunity to see what was being reported about him.

155.    Plaintiff spent time researching his rights to obtain the information contained in his consumer report.

156.    Plaintiff had to obtain counsel to enforce his federally protected

32

rights.

157.   Plaintiff became frustrated with the process and delay in obtaining his consumer reports and the information that should have been provided to him months, and even years, earlier.

158.   Plaintiff spent time trying to obtain his consumer report from SH Group, Sterling and Kiosite. Ironically, SH Group denied obtaining his consumer report or using his consumer report to take adverse action against him in 2019. Only after initiating this action was Plaintiff able to confirm SH Group had used his consumer report information in 2019 to deny him employment.

159.   Since 2020, Plaintiff has spent time trying to determine who obtained his consumer report information and when it was obtained. If SH Group or Kiosite had provided him with a disclosure or obtained his written authorization in 2019, Plaintiff would have known who had procured his consumer report.

160.   If Kiosite had provided Plaintiff with contemporaneous notice when it was reporting his information to SH Group in 2019, or SH Group would have provided Plaintiff pre-adverse action notice, Plaintiff would have known who was using his consumer report, and what was being reported about him.

161.   The FCRA's protections regarding who may obtain consumer reports and how they may be used are real and substantive, not merely procedural. The violation alleged here is not just a technical requirement – Kiosite had no right to

procure (or cause to be procured) his consumer report information without identifying the end user to the consumer reporting agency. If Kiosite had done so, Plaintiff would have known SH Group had used his consumer report to take adverse action against him.

162. Similarly, Kiosite had no right to furnish Plaintiff's consumer report information to SH Group without certification from SH Group that it had provided Plaintiff a disclosure, obtained his written authorization and would provide him with pre-adverse action notice, if applicable. If Kiosite had required such certification, SH Group would have provided him a disclosure and obtained his written authorization before obtaining and using his consumer report. Kiosite's failure to obtain the requisite certifications from SH Group resulted in an invasion of Plaintiff's privacy.

163. Plaintiff and the putative class members have all suffered concrete, in-fact injuries that are directly traceable to Defendants' conduct and that is likely to be redressed by a favorable decision here.

### *Defendants Acted Willfully*

164. Defendants knew, or should have known, about their legal obligations under the FCRA. These obligations are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's promulgations.

165.   Kiosite knowingly violated the FCRA's disclosure, authorization, resale, and notification requirements.

166.   Kiosite obtained, or had available, substantial written materials, which apprised it of its duties as a user or reseller under the FCRA.

167.   SH Group obtained, or had available, substantial written materials, which apprised it of its duties under the FCRA.

168.   These requirements have been part of the fabric of the FCRA since Congress enacted it. Kiosite and SH Group have had decades by which to become compliant with these requirements, yet they have not done so.

169.   Despite knowledge of these legal obligations, Kiosite and SH Group acted consciously in breaching their known duties and depriving the Plaintiff and putative class members of their rights under the FCRA.

170.   As a result of these FCRA violations, Kiosite and SH Group are liable to Plaintiff and to each putative class member for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for the violations alleged herein, and for attorney's fees and costs pursuant to § 1681n and § 1681o.

## CLASS ACTION ALLEGATIONS

171.   Pursuant to Rule 23 Fed.R.Civ.P. and the FCRA, Plaintiff brings this action for himself and on behalf of the following putative classes.

172.   In Count I, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(2)(A)(i) against Kiosite as on behalf of a "Kiosite No Disclosure Class" consisting of:

> **All job applicants and employees in the United States subject of a consumer report procured (or caused to be procured) by Kiosite, LLC for employment purposes but to whom Kiosite, LLC did not first provide a clear and conspicuous disclosure in a document consisting solely of the disclosure in the five years preceding the filing of this action through the date of final judgment.**

173.   In Count II, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(2)(A)(ii) against Defendant Kiosite on behalf of a "Kiosite No Authorization Class" consisting of:

> **All job applicants and employees in the United States subject of a consumer report procured (or caused to be procured) by Kiosite, LLC for employment purposes but from whom Kiosite, LLC did not first obtain written authorization to procure their report in the five years preceding the filing of this action through the date of final judgment.**

174.   In Count III, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(2)(A)(i) against SH Group as on behalf of a "SH Group No Disclosure Class" consisting of:

> **All job applicants and employees in the United States subject of a consumer report procured by SH Group for employment purposes but to whom SH Group did not first provide a clear and conspicuous disclosure in a document consisting solely of the disclosure in the five years preceding the filing of this action through the date of final judgment.**

175.   In Count IV, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(2)(A)(ii) against SH Group on behalf of a "SH Group No Authorization

Class" consisting of:

> All job applicants and employees in the United States subject of a consumer report procured by SH Group for employment purposes but from whom SH Group did not first obtain written authorization to procure their report in the five years preceding the filing of this action through the date of final judgment.

176.   In Count V, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(3) against SH Group on behalf of an "SH Group Adverse Action Class," defined as:

> All SH Group Operations, LLC job applicants and employees in the United States against whom adverse employment action was taken, based, in whole or in part, on information contained in their consumer report, who were not provided notice and a copy of their report in the five years preceding the filing of this action through the date of final judgment.

177.   In Count VI, Plaintiff asserts a FCRA claim under 15 U.S.C. §§ 1681e(e)(1)(A) and 15 U.S.C. §§ 1681e(e)(2)(A),(B) against Kiosite on behalf of a "1681e(e)" Class defined as:

> All consumers who were subject of a consumer report (or any information in the report) that was procured (or caused to be procured) by Kiosite for resale without disclosing the identity of the end-user of the report to the consumer reporting agency or maintaining reasonable procedures to identify each end user or obtain from each end user the requisite certifications, within five years of the filing of this lawsuit through the date of final judgment in this action.

178.   In Count VII, Plaintiff asserts a FCRA claim under 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii) against Kiosite on behalf of a "No Certification" Class defined as:

> All employees and job applicants in the United States who were the subject of a consumer report furnished by Kiosite without the user's

> certification of compliance with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3), within five years of the filing of this lawsuit through the date of final judgment in this action.

179.     In Count VIII, Plaintiff brings a separate claim against Kiosite under § 1681k, for a "1681k Notice" Class defined as:

> All employees and job applicants in the United States who were the subject of a consumer report (or consumer report information) furnished by Kiosite that included criminal history entries of the grade of misdemeanor or higher, within five years of the filing of this lawsuit through the date of final judgment in this action.

180.     <u>Numerosity</u>: The members of the putative Kiosite No Disclosure, Kiosite No Authorization, Kiosite 1681e(e), Kiosite No Certification, and Kiosite 1681k classes are so numerous that a joinder of all Class members is impracticable. Plaintiff is informed that all of the Kiosite putative classes have hundreds, if not thousands of members. Similarly, the members of the SH Group No Disclosure, SH Group No Authorization, and SHE Group Adverse Action classes are so numerous that a joinder of all Class members is impracticable. SH Group regularly procures and uses consumer reports for employment purposes, including adverse employment actions. Plaintiff is informed and believes that during the relevant time period there are hundreds if not thousands of consumers that satisfy the definition of the SH Group putative classes.

181.     <u>Typicality</u>: Plaintiff's claims are typical of those of the members of the putative Kiosite No Disclosure, Kiosite No Authorization, Kiosite 1681e(e), Kiosite No Certification, and Kiosite 1681k classes because Kiosite procured (or

caused to be procured) all of their consumer reports under the same processes and procedures, re-sold their information to third parties in the same manner, and systemically failed to provide class members notice when reporting information about them. Specifically, none of the Kiosite No Disclosure or No Authorization class members received a disclosure or was provided written authorization; Kiosite failed to identify the end users to the consumer reporting agency from whom it obtained their reports for resale; failed to obtain the requisite certifications from the end-user of the reports and failed to provide § 1681k notice when reporting negative information about them. Additionally, Plaintiff's claims are typical of those of the members of the SH Group No Disclosure, SH Group No Authorization, and SH Group Adverse Action classes. Again, like Plaintiff, none received a disclosure from SH Group, authorized SH Group to obtain their report, or received pre-adverse action notice, when applicable. The FCRA injuries suffered by Plaintiff are typical of those suffered by other members of the putative classes. Additionally, the damages Plaintiff is seeking to recover are typical of the damages Plaintiff is seeking on behalf of the putative classes.

182. <u>Adequacy</u>: Plaintiff is a member of and will fairly and adequately protect the interests of the putative classes, and has retained counsel experienced in FCRA class action litigation.

183. <u>Commonality</u>: Common questions of law and fact exist as to all

members of the putative classes, and predominate over any questions solely affecting individual members of the putative classes. These common questions include, but are not limited to:

    a.      whether Kiosite procured (or caused to be procured) consumer reports for employment purposes without making the FCRA-required disclosures;

    b.      whether Kiosite procured (or caused to be procured) consumer reports for employment purposes without first obtaining consumers' written authorization;

    c.      whether SH Group procured consumer reports for employment purposes without making the FCRA-required disclosures;

    d.      whether SH Group procured consumer reports for employment purposes without first obtaining consumers' written authorization;

    e.      whether SH Group failed to provide Plaintiff with pre-adverse action notice and a copy of his consumer report before taking an adverse employment action against him based in whole or in part on his consumer report,;

    f.      whether Kiosite failed to identify the end-user of consumer report information to the consumer reporting agency from whom it procured consumer report information for resale;

    g.      whether Kiosite failed to obtain certifications of compliance with the FCRA's pre-adverse action requirement, when applicable, from end users before furnishing consumer reports;

    h.      whether Kiosite failed to obtain certifications of compliance with the FCRA's disclosure and authorization requirements from end users before furnishing consumer reports

    i.      whether Kiosite failed to provide contemporaneous notice to consumers when reporting public record information likely to

have an adverse effect on the consumer's ability to obtain employment and the person to whom it was reporting such information;

j.    whether Kiosite's FCRA violations were willful;

k.    whether SH Group's FCRA violations were willful;

l.    the proper measure of statutory damages and attorneys' fees.

184.   This case is maintainable as a class action because prosecution of actions by or against individual members of the putative classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for the Kiosite and SH Group. Further, adjudication of each individual class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

185.   This case is also maintainable as a class action because Kioisite and SH Group acted or refused to act on grounds that apply generally to the putative classes.

186.   Class certification is also appropriate because questions of law and fact common to the putative classes predominate over any questions affecting only individual members of the putative classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct, which is described herein, stems from common

and uniform policies and practices, resulting in common violations of the FCRA. Members of the putative classes do not have an interest in pursuing separate actions, as the amount of each class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

187.   Plaintiff intends to send notice to all members of the putative classes to the extent required by the Federal Rules of Civil Procedure. The names and addresses of the putative class members are readily available from Defendants and through records maintained by third parties.

**COUNT I**
**Failure to Make Proper Disclosure**
**in Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(i)**
**(Against Kiosite)**

188.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 58-114.

189.   Kiosite violated the FCRA by procuring consumer reports relating to Plaintiff and other Kiosite No Disclosure Class members without first providing a

disclosure in a document consisting solely of the disclosure.

190.  The foregoing violations were willful. At the time Kiosite violated 15 U.S.C. § 1681b(b)(2)(A)(i), Kiosite knew that it had to disclose to Plaintiff and the putative class that it intended to procure their consumer reports before it was permitted to obtain their consumer reports for employment purposes. A plethora of authority, including both case law, and FTC opinions, existed at the time of Kiosite's violations on this very issue. Kiosite's willful conduct is also reflected by, among other things, the following facts:

      a.   Kiosite is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

      b.   Kiosite knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

      c.   Kiosite voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

191.  Plaintiff and the Kiosite No Disclosure Class are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

192.  Plaintiff and the Kiosite No Disclosure Class are further entitled to

recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

a.   determining that this action may proceed as a class action;

b.   designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

c.   issuing proper notice to the putative class at Kiosite's expense;

d.   awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

e.   awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT II
### Failure to Obtain Authorization in
### Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(ii)
### (against Kiosite)

193.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 58-114.

194.   Kiosite violated the FCRA by procuring consumer reports relating to Plaintiff and other Kiosite No Authorization class members without first obtaining their written authorization.

195.   The foregoing violations were willful. Kiosite acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other No Authorization Class members under 15 U.S.C. § 1681b(b)(2)(A)(ii). Kiosite knew

or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission. Kiosite obtained or otherwise had available substantial written materials that apprised Kiosite of its duties under the FCRA. Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

196. Plaintiff and the Kiosite No Authorization Class are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

197. Plaintiff and the Kiosite No Authorization Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

   a.   determining that this action may proceed as a class action;

   b.   designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

   c.   issuing proper notice to the putative class at Kiosite's expense;

   d.   awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

e.     awarding reasonable attorneys' fees and costs as provided by the FCRA.

**COUNT III**
**Failure to Make Proper Disclosure**
**in Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(i)**
**(against SH Group)**

198.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 58-114

199.   SH Group violated the FCRA by procuring consumer reports relating to Plaintiff and other SH Group No Disclosure Class members without first providing a disclosure.

200.   The foregoing violations were willful. At the time SH Group violated 15 U.S.C. § 1681b(b)(2)(A)(i), SH Group knew that it had to disclose to Plaintiff and the putative class that it intended to procure their consumer reports before it was permitted to obtain their consumer reports for employment purposes. A plethora of authority, including both case law, and FTC opinions, existed at the time of SH Group's violations on this very issue. SH Group's willful conduct is also reflected by, among other things, the following facts:

a.     SH Group is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

b.     SH Group knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the

46

FCRA and the plain language of the statute; and

c.     SH Group voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

201.   Plaintiff and the SH Group No Disclosure Class are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

202.   Plaintiff and the SH Group No Disclosure Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

a.     determining that this action may proceed as a class action;

b.     designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

c.     issuing proper notice to the putative class at SH Group's expense;

d.     awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

e.     awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT IV
### Failure to Obtain Authorization in
### Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(ii)
### (against SH Group)

203.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 58-114.

204.   SH Group violated the FCRA by procuring consumer reports relating to Plaintiff and other SH Group No Authorization class members without first obtaining their written authorization.

205.   The foregoing violations were willful. SH Group acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other SH Group No Authorization Class members under 15 U.S.C. § 1681b(b)(2)(A)(ii). SH Group knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission. SH Group obtained or otherwise had available substantial written materials that apprised SH Group of its duties under the FCRA. Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

206.   Plaintiff and the SH Group No Authorization Class are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court

may allow under 15 U.S.C. § 1681n(a)(2).

207.   Plaintiff and the SH Group No Authorization Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

    a. determining that this action may proceed as a class action;

    b. designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

    c. issuing proper notice to the putative class at SH Group's expense;

    d. awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

    e. awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT V
### Failure to Provide Adverse Action Notice in
### Violation of FCRA 15 U.S.C. § 1681b(b)(3)(A)
### (against SH Group)

208.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 58-114.

209.   SH GROUP used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Adverse Action Class.

210.   SH Group violated the FCRA by failing to provide Plaintiff and other SH Group Adverse Action Class members with pre-adverse action notice and a copy of their consumer report before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

211.   The foregoing violations were willful. SH Group acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other SH Group Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A). SH Group knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission. SH Group obtained or otherwise had available substantial written materials that apprised SH Group of its duties under the FCRA. Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

212.   Plaintiff and the SH GROUP Adverse Action Class are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

213.   Plaintiff and the SH GROUP Adverse Action Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. §

1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

      a.    determining that this action may proceed as a class action;

      b.    designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative classes;

      c.    issuing proper notice to the putative classes at SH Group's expense;

      d.    awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

      e.    awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT VI
### Violation of U.S.C. §§ 1681e(e)(1)(A)-(B), (2)(A)
### (against Kiosite)

214.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 58-114.

215.   Kiosite is a re-seller of consumer reports.

216.   Kiosite obtained consumer reports or consumer report information from a consumer reporting agency for the purpose of resale.

217.   Kiosite obtained consumer reports or consumer report information from a consumer reporting agency without first disclosing the identity of the end-user to the consumer reporting agency.

218.   Kiosite violated the FCRA by failing to provide the identity of the end-user to the consumer reporting agency before re-selling the report or consumer report information.

219.   Kiosite violated the FCRA by failing to obtain certification from the end user the permissible purpose for which the report was being furnished. 15 U.S.C. § 1681e(e)(2)(A)

220.   Plaintiff and other **§** 1681e(e) members class members were harmed as their consumer report or consumer report information was disseminated and published without any record of the end-user's identity provided to the consumer reporting agency. 15 U.S.C. § 1681e(e)(1)(A).

221.   Plaintiff and other **§** 1681e(e) members class members were harmed as their consumer report or consumer report information was resold without any certification of permissible purpose from the end user. 15 U.S.C. § 1681e(e)(2)(A).

222.   The foregoing violations were willful. Kiosite acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other § 1681e(e) class members. Kiosite knew or should have known of its legal obligations under the FCRA.  These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission. Kiosite obtained or otherwise had available substantial written materials that apprised Kiosite of its duties under the FCRA. Any reasonable reseller knows of the

existence of these FCRA mandates, or can easily discover their substance.

223.   Plaintiff and the § 1681e(e) class members are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

224.   Plaintiff and the 1681e(e) class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

      a.    determining that this action may proceed as a class action;

      b.    designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

      c.    issuing proper notice to the putative class at Kiosite's expense;

      d.    awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

      e.    awarding reasonable attorneys' fees and costs as provided by the FCRA.

### COUNT VII
**Violation of 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii)**
**(against Kiosite)**

225.   Plaintiff alleges and incorporates by reference the allegations in the

preceding paragraphs 58-114.

226.   Kiosite willfully violated 15 U.S.C. § 1681b(b)(1)(A)(i)-(ii) because it furnished consumer reports about Plaintiff and class members, which were used for employment purposes, without the user's certification of compliance with the disclosure, authorization and notification requirements set forth in 15 U.S.C. §§1681b(b)(2)(i)-(ii) and § 1681b(b)(3)(i)-(ii).

227.   The forgoing violations were willful. At the time Kiosite violated 15 U.S.C. § 1681b(b)(1)(A), Kiosite knew it was required to obtain certification of compliance with 15 U.S.C. § 1681b(b)(2) from the user before furnishing the user with consumer reports for employment purposes and certification with the notification requirements of 15 U.S.C. § 1681b(b)(3), if applicable. Kiosite acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other § 1681e(e) class members. Kiosite knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission. Kiosite obtained or otherwise had available substantial written materials that apprised Kiosite of its duties under the FCRA. Any reasonable reseller knows of the existence of these FCRA mandates or can easily discover their substance.

228.   Plaintiff and the Kiosite Certification class members are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more

than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

      a.    determining that this action may proceed as a class action;

      b.    designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

      c.    issuing proper notice to the putative class at Kiosite's expense;

      d.    awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

      e.    awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT VIII
### Violation of 15 U.S.C. § 1681k(a)(1)

229.  Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 58-114

230.  Kiosite willfully violated 15 U.S.C. § 1681k(a)(1) because it provided consumer reports about Plaintiff and class members, which were used for employment purposes and contained public-record information likely to have an adverse effect on consumers' ability to obtain employment, without providing the subjects of the report contemporaneous notice that it was furnishing the report to

the users.

231.   Kiosite cannot rely on the "strict procedures" requirement of Section 1681k(a)(2) because it takes no steps to ensure the public-record information it reports is complete and up to date.

232.   Kiosite simply merges, assembles and evaluates, without verification, the consumer report or consumer report information it obtains from consumer reporting agencies.

233.   Plaintiff and class members suffered informational injury by Kiosite's failure to provide them with statutorily required information when such information was due.

234.   The forgoing violations were willful. At the time Kiosite violated 15 U.S.C. § 1681k(a)(1), Kiosite knew it was required to provide contemporaneous notice of its furnishing of reports but has no process in place to meet the strict procedures requirement of Section 1681k(a)(2) when it furnishes reports for employment purposes that contain negative public-record information. Kiosite's willful conduct is also reflected by, among other things, the following facts:

   a.     Kiosite knew of potential FCRA liability;

   b.     Kiosite is a company with access to legal advice through its own general counsel's office and outside employment counsel, and there will be no contemporaneous evidence that it determined that its conduct was lawful;

    c.    The FCRA's contemporaneous notice requirement is clearly spelled out in the plain language of the statute;

    d.    Kiosite knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

    a.    determining that this action may proceed as a class action;

    b.    designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

    c.    issuing proper notice to the putative class at Kiosite's expense;

    d.    awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

    e.    awarding reasonable attorneys' fees and costs as provided by the FCRA.

## DEMAND FOR JURY TRIAL

Plaintiff and the putative classes demand a trial by jury.

Dated this 11th day of July, 2022.

/s/ *Marc R. Edelman*
**MARC R. EDELMAN, ESQ.**
Fla. Bar No. 0096342
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Tele: 813-223-5505; Fax: 813-257-0572
MEdelman@forthepeople.com
*Attorney for Plaintiff*